UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JEFFREY LYNN FRANKLIN,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>HERNANDEZ, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 2:20-cv-00063-RFB-DJA<br><br>**SCREENING ORDER** |

Plaintiff, who initiated this action when he was a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has filed an amended civil rights complaint[1] pursuant to 42 U.S.C. § 1983, two motions for appointment of counsel, and an application to proceed *in forma pauperis*. ECF Nos. 1-2, 3, 3-1, 4, 9. Based on the financial information provided, the Court grants Plaintiff leave to proceed without prepayment of fees or costs pursuant to 28 U.S.C. § 1915(a)(1).[2] The Court now screens Plaintiff's first amended civil rights complaint pursuant to 28 U.S.C. § 1915A.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C.

---

[1] An amended complaint replaces an earlier complaint. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989). Therefore, the operative complaint here is the first amended complaint.

[2] Plaintiff is not subject to the requirements of 28 U.S.C. § 1915(a)(2), (b) because he is no longer a "prisoner" within the meaning of the statute. See 28 U.S.C. § 1915(h).

§ 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v. Lab. Corp. of America, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. See Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. Id.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). See Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); see also McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF COMPLAINT

In the first amended complaint ("FAC"), Plaintiff sues Caseworker Hernandez, Warden Jerry Howell, and Associate Warden Dreesen for events that allegedly took place while Plaintiff was incarcerated by the NDOC. ECF No. 3 at 2. Plaintiff alleges four claims and seeks monetary damages. Id. at 8, 11.

### A. Claim 1

Claim 1 alleges the following: On December 21, 2017, Plaintiff was seen by "H.D.S.P. Medical" for lower back pain, and the doctor prescribed him ibuprofen and a lower bunk. ECF No. 3 at 4. On February 8, 2018, Plaintiff was transferred to Three Lakes Valley Camp. Id. During an interview with Caseworker Hernandez, she told Plaintiff that she was not going to give him a medical lower bunk and that, if he wanted a lower bunk, she would send him back to H.D.S.P. where he had one. Id. Hernandez assigned Plaintiff to a top bunk, and he then had to go up and down. Id. Plaintiff's back pain got to the point that he could not sleep. Id. On February 18, 2018, Plaintiff submitted a medical kite to be seen by a doctor. Id. He was told that he would be seen

in approximately 6-9 weeks. Id. On February 23, 2018, Plaintiff submitted another medical kite to be seen by a doctor as soon as possible, and he then filed an emergency grievance on February 27, 2018. Id. Plaintiff was given a prescription for ibuprofen and was assigned by Medical to a lower bunk. Id. However, Hernandez made sure Plaintiff did not get a Medical-assigned lower bunk. Id. Plaintiff stayed in the top bunk assigned by Hernandez for over a year and was not assigned a lower bunk until February 19, 2019. Id. Plaintiff alleges that this was a violation of his Eighth Amendment right against deliberate indifference to serious medical needs and his Fourteenth Amendment right to due process. Id.

### 1. Due Process

A pretrial detainee is protected from conditions constituting punishment under the Due Process Clause of the Fourteenth Amendment, while those who already have been convicted of offenses are protected from cruel and unusual punishment by the Eighth Amendment's Cruel and Unusual Punishment Clause. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1971). Here, Plaintiff already had been convicted at the time of the alleged events, so the Eighth Amendment, not the Fourteenth Amendment, applies to any claim for deliberate indifference to serious medical needs.[3] The Court therefore dismisses the Fourteenth Amendment due process claim with prejudice, as amendment would be futile.

### 2. Eighth Amendment Claim

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment

---

[3] To the extent Plaintiff is alleging that Hernandez impinged on a right to be housed at his preferred prison, he fails to state a colorable due process claim as he has no liberty interest in being housed at any particular prison regardless of whether prison conditions are more favorable at one prison. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (holding that prisoners have no constitutional entitlement sufficient to invoke due process with respect to their classification status and recognizing that no due process protections are required upon the discretionary transfer of state prisoners to a substantially less agreeable prison); see also Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (holding that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State"); Meachum v. Fano, 427 U.S. 215, 225 (1976) (Due Process Clause does not protect a convicted prisoner against transfer from one institution to another withing the state prison system).

when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

To prove deliberate indifference, a plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see also Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc).

Furthermore, to satisfy the deliberate indifference prong, a plaintiff must show "(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096. When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further harm. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). Prison officials who know of a substantial risk to an inmate's health and safety are liable only if they responded unreasonably to the risk, even if the harm ultimately was not averted. Farmer, 511 U.S. at 844.

Here, Plaintiff alleges a sufficiently serious medical need, which is pain in his lower back. ECF No. 3 at 4. Even if Defendant Hernandez believed at the time that he was transferred to Three Lakes Valley Conservation Camp that Plaintiff had back pain requiring him to be assigned to a lower bunk, according to Plaintiff's allegations, Hernandez offered to place him in a lower bunk at H.D.S.P.. As discussed above, Plaintiff has no right to be housed at the prison of his choice.

Hernandez's failure to permit Plaintiff to choose the prison where he would have his medical needs met is not an Eighth Amendment violation.

However, liberally construed, the complaint also alleges that Plaintiff's back condition and pain worsened as a result of Hernandez assigning him to an upper bunk, that Medical subsequently determined that Plaintiff must be placed in a lower bunk due to his medical condition, but that Hernandez nevertheless failed to take action that would prevent Plaintiff from continuing to suffer increased pain from being assigned to an upper bunk. This is sufficient for screening purposes to allege deliberate indifference by Defendant Hernandez. Therefore, liberally construing the complaint for purposes of screening, the Court finds that Plaintiff states a colorable Eighth Amendment claim against Defendant Hernandez, and this claim may proceed.

**B. Claim 2**

Claim 2 alleges the following: On March 26, 2018, Plaintiff had an open case in the United States District Court and needed to answer the court's order in a timely manner. ECF No. 3 at 5. Plaintiff requested a brass form Doc 509 from the unit officer to mail his legal letter and was told by a correctional officer that Caseworker Hernandez said he could not get a Doc 509 form without getting it from Hernandez at door call on the Tuesday of the following week. Id. That same day, Plaintiff filed an emergency grievance against Hernandez but was told it was not an emergency. Id. Plaintiff then filed an informal grievance on that same date. Id. On April 5, 2018, the grievance coordinator "approved," and correctional officers were allowed to mail any legal documents upon request by Doc 509 form without getting the form from Hernandez. Id. Plaintiff concludes that his First Amendment right to send out legal mail and his Fourteenth Amendment right to due process were violated. Id.

Plaintiff alleges that he was able to send out his legal mail but appears to be alleging that there was a delay in his ability to send out the mail in a timely manner. The Court therefore construes this claim as a claim for denial of access to the courts in violation of the First Amendment and Fourteenth Amendment.

Prisoners have a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). In addition to the right to bring cases, prisoners have the right to litigate, without

active interference, claims that have a reasonable basis in law and fact.  Silva v. Di Vittorio, 658 F.3d 1090, 1103-04 (9th Cir. 2011), overruled on other grounds as stated in Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived.  Lewis v. Casey, 518 U.S. 343, 349 (1996).  An "actual injury" is actual prejudice with respect to litigation.  Lewis, 518 U.S. at 348.  However, delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." Id. at 362.

The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions.  Lewis, 518 at 353 n.3, 354-55.  It is not enough for a plaintiff merely to conclude that the allegedly frustrated legal claim was non-frivolous.  The "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Christopher v. Harbury, 536 U.S. 403, 415 (2002).  The complaint must similarly identify the particular remedy being sought.  Id. at 415.  The "complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued" and a similar plain statement should describe the lost remedy and any remedy legally available for the access to the courts claim.[4]  Id. at 417-18.

The Court finds that Plaintiff fails to state a colorable access to the courts claim.  Plaintiff has not alleged facts sufficient to show that Hernandez caused him to be injured in a criminal appeal, habeas case, or civil rights case, and he has not alleged the relevant remedies and the facts sufficient to state underlying non-frivolous claims. The Court therefore dismisses the access to the courts claims without prejudice.

---

[4] Rule 8(a) requires that a complaint allege a short and plain statement of facts sufficient to show that the plaintiff is entitled to relief.

7

**C. Claim 3**

On January 15, 2019, Plaintiff was informed by Caseworker Childress that his consideration for approval by the Offender Management Division for housing at Casa Grande as a community trustee was stayed due to caseworker Hernandez. ECF No. 3 at 6. Administrative Regulation 521.05 prohibits NDOC inmates from being classified as community trustees if they have a conviction for a felony involving the use or threat of violence within the last three years. Id. However, Plaintiff was convicted over ten years ago of a non-violent offense, so this restriction does not apply to him. Id. Plaintiff appears to be alleging that Hernandez put information in his case file that she knew would prejudice his "equal opportunity" to be considered for community trustee placement. Id. Plaintiff concludes that the alleged conduct violated his Fourteenth Amendment rights to due process and equal protection. Id.

**1. Due Process**

Plaintiff's claim appears to be based on the allegation that he was not classified in the NDOC classification system as a community trustee and therefore was not transferred to Casa Grande transitional housing as his NDOC facility. Based on these allegations, Plaintiff is attempting to state a due process claim based on his classification status and housing.

Standard due process analysis requires the existence of a liberty or property interest. Swarthout v. Cooke, 562 U.S. 216, 219 (2011). When there is such a liberty interest or property interest, the only other issue is whether the plaintiff was deprived of that interest without the constitutionally required procedures. Id. at 219-20. Although Plaintiff makes the conclusory assertion that he had a liberty interest, he is incorrect. Plaintiff did not have a liberty interest in his classification as a community trustee or in being housed at Casa Grande while in the custody of the NDOC. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (holding that prisoners have no constitutional entitlement sufficient to invoke due process with respect to their classification status and recognizing that there no due process protections are required upon the discretionary transfer of state prisoners to a substantially less agreeable prison); see also Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (holding that "an inmate has no justifiable expectation that he will be incarcerated

in any particular prison within a State"); Meachum v. Fano, 427 U.S. 215, 225 (1976) (Due Process Clause does not protect a convicted prisoner against transfer from one institution to another within the state prison system). Plaintiff therefore does not and cannot state a colorable due process claim, and the Court dismisses this claim with prejudice, as amendment would be futile.

### 2. Equal Protection

In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Conclusory allegations of motive are insufficient; specific, non-conclusory factual allegations are required. Jeffers v. Gomez, 267 F.3d 895, 913-14 (9th Cir. 2001).

In Olech, the Supreme Court explicitly addressed "whether the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group." 528 U.S. at 564. The Supreme Court ruled in the affirmative and "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.; see also Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008) (recognizing that an equal protection claim may be maintained in some circumstances even if the plaintiff does not allege class-based discrimination, "but instead claims that she has been irrationally singled out as a so-called 'class of one'").

However, although the Supreme Court has acknowledged the class-of-one theory of equal protection, it has held that the theory applies only in certain limited circumstances; it does not apply when the state actions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 603 (2008) (holding that the class-of-one theory does not apply in the public employment context); see also Towery v. Brewer, 672 F.3d 650, 660–61 (9th Cir. 2012). "[A]llowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such

officials are entrusted to exercise." Engquist, 553 U.S. at 604 (recognizing that a traffic officer does not violate the Equal Protection Clause merely because the officer gives tickets to only some speeding drivers). The Supreme Court has recognized that the problem with allowing class-of-one claims to go forward in a context where government officials are necessarily making subjective, individualized decisions is that the government will be forced to defend a multitude of such claims and courts will be obliged to go through them in search of the rare needle in a haystack. Engquist, 553 U.S. at 608-09.

Thus, a person cannot state an equal protection claim merely by dividing all persons not injured into one class and alleging that they received better treatment than the Plaintiff did. See Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005). The Fourteenth Amendment's Equal Protection Clause does not require that states treat all persons within their borders identically. See McGowan v. Maryland, 366 U.S. 420, 425 (1961); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013).

Furthermore, to state a "class-of-one" equal protection claim, the plaintiff must identify the group of individuals with whom he is similarly situated, identify the allegedly intentional and disparate treatment, and allege that there was no rational basis for the different treatment. Gerhart v. Lake Cty., Mont., 637 F.3d 1013, 1022 (9th Cir. 2011); Chappell v. Bess, No. 2:01-CV-01979 KJN P, 2012 WL 3276984, at *19–21 (E.D. Cal. Aug. 9, 2012). "Similarly situated" persons are those "who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Thus, a mere violation of regulations or statutes does not constitute an equal protection violation.

Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Therefore, to state an equal protection claim against a supervisor, the plaintiff must allege facts sufficient to show that the supervisor himself violated the Equal Protection Clause, including engaging in intentional different treatment of similarly situation persons; merely alleging that the supervisor's subordinate violated the Equal Protection Clause is not sufficient. Id. at 676-77.

Plaintiff does not allege that he was discriminated against because he is a member of a

suspect class and instead appears to be relying on a "class-of-one theory." The Court finds that Plaintiff has stated a colorable equal protection claim. Liberally construed, Plaintiff alleges that other inmates with his same criminal background, i.e. those without a felony reflecting a crime of violence within the last three years, have not been subject to the targeted reclassification that he has. Moreover, he alleges that this false classification was done for malicious and vindictive reasons that have nothing to do with legitimate policies or practices of the NDOC. A state official could not rationally exercise her discretion to fabricate information in state records. The Plaintiff has therefore alleged a colorable equal protection claim.

### D.  Claim 4

Claim 4 alleges the following: On January 2, 2020, Plaintiff informed a correctional officer that he had been granted parole with an effective date of January 1, 2020. ECF No. 3 at 8. The correctional officer spoke to Hernandez, who said that this date did not mean anything to her and "locked" Plaintiff's parole date in for release on February 5, 2020. Id. Plaintiff refers to exhibits to his complaint concerning his release to Casa Grande upon release on parole, showing that he was approved for a February 5, 2020 date for the "parole side" of Casa Grande.[5] ECF No. 3-1 at 26. Plaintiff asserts that he has a liberty interest in his actual release date of January 1, 2020 that cannot be taken from him without cause and that Hernandez was deliberately indifferent to this liberty interest by failing to process his paperwork for release on January 1, 2020. ECF No. 3 at 8. Warden Howell has failed to supervise and train Hernandez through Associate Warden Dreesen. Id. Plaintiff concludes that this violated his Fourteenth Amendment rights to due process and equal protection. Id.

#### 1.  Due Process Claim

In order to state a Fourteenth Amendment due process claim, a plaintiff must adequately allege that he was denied a specified liberty interest and that he was deprived of that liberty interest

---

[5] The Court recognizes that this is distinct from Plaintiff's allegations in Claim 3 seeking prison classification as a community trustee and being housed at Casa Grande as a community trustee while serving his sentence in NDOC custody. Rather, Claim 4 concerns Plaintiff's release from NDOC custody upon parole with Plaintiff to be housed on the "parole side" of Casa Grande after that release.

without the constitutionally required procedures. Swarthout v. Cooke, 562 U.S. 216, 219 (2011). In Nevada, state prisoners do not have a liberty interest in parole or parole eligibility. See Moor v. Palmer, 603 F.3d 658, 661-62 (9th Cir. 2010); see Nev. Rev. Stat. § 213.10705 (stating that "[t]he Legislature finds and declares that the release or continuation of a person on parole or probation is an act of grace of the State. No person has a right to parole or probation . . . and it is not intended that the establishment of standards relating thereto create any such right or interest in liberty or property or establish a basis for any cause of action against the State, its political subdivisions, agencies, boards, commissions, departments, officers or employees"). The Supreme Court has held that, if state law does not create a liberty interest in parole, there can be no liberty interest after a grant of parole. See Jago v. Van Curen, 454 U.S. 14, 20-21 (1981) (holding that, even after authorities granted the inmate parole, the inmate did not suffer a due process violation when authorities failed to hold a hearing before rescinding and denying the grant of parole because the state statutes had not created a protected liberty interest for parole).

The Court dismisses the due process claim in its entirety, with prejudice, as amendment would be futile. Plaintiff fails to establish a liberty interest for his due process claim because there is no liberty interest in parole, parole eligibility, or a grant of parole in Nevada. See Jago v. Van Curen, 454 U.S. at 20-21. Plaintiff therefore cannot state a colorable due process claim.

**2. Equal Protection Claim**

For a discussion of the relevant law concerning equal protection, see Section II.C.2 supra.

The Court finds that Plaintiff states a colorable claim against Defendant Hernandez. Plaintiff has alleged essentially that Hernandez also targeted him for vindictive conduct by intentionally altering his parole date. Liberally construed, he alleges that other individuals who are similarly situated in terms of having an established release or parole date where not subject to the same intentional conduct of Hernandez, i.e. having their parole release dates altered for no valid reason. He alleges that she exercised this authority maliciously and without legitimate penological reasons. Plaintiff has thus stated a colorable equal protection claim against Hernandez.

Plaintiff has not alleged, however, facts that would be sufficient to show that Defendant Howell or Defendant Dreesen played any role in the date that Plaintiff was released from NDOC

custody or any role in the alleged modification of his parole release date. Plaintiff also has not alleged facts sufficient to show that either Defendant Howell or Defendant Dreesen intentionally treated him differently than they treated similarly situated persons. The Court therefore dismisses this equal protection claim without prejudice as to these two defendants.

### III.    MOTIONS FOR APPOINTMENT OF COUNSEL

Like many prisoners, Plaintiff has filed motions for appointment of counsel. ECF Nos. 1-2, 4, 9. A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights actions. Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981). Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. "Neither of these considerations is dispositive and instead must be viewed together." Id. In the instant case, the Court does not find exceptional circumstances that warrant the appointment of counsel. Therefore, the Court denies without prejudice the motions for appointment of counsel.

### IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's application to proceed in district court without prepaying fees or costs (ECF No. 9) is granted.

**IT IS FURTHER ORDERED** that the operative complaint is the first amended complaint (ECF No. 3, 3-1) and that the Clerk of the Court will send Plaintiff a courtesy copy of the first amended complaint.

**IT IS FURTHER ORDERED** that the portion of Claim 1 alleging a Fourteenth Amendment claim is dismissed with prejudice, as amendment would be futile.

1    **IT IS FURTHER ORDERED** that the portion of Claim 1 alleging an Eighth Amendment
2    claim may proceed against Defendant Hernandez.

3    **IT IS FURTHER ORDERED** that Claim 2, alleging an access to the courts claim, is
4    dismissed without prejudice.

5    **IT IS FURTHER ORDERED** that the Fourteenth Amendment due process claims in
6    Claim 3 and Claim 4 are dismissed with prejudice, as amendment would be futile.

7    **IT IS FURTHER ORDERED** that the equal protection claims in Claim 3 and Claim 4
8    may proceed against Hernandez, but are dismissed without prejudice as to all other defendants.

9    **IT IS FURTHER ORDERED** that the motions for appointment of counsel (ECF Nos. 1-
10   2, 4) are denied.

11   **IT IS FURTHER ORDERED** that, given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

**IT IS FURTHER ORDERED** that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the

14

1 result, but both have given something up and both have obtained something in return.

2 **IT IS FURTHER ORDERED** that if the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee. This fee cannot be waived. If Plaintiff is allowed to proceed in forma pauperis, the fee will be paid in installments from his prison trust account. See 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed in forma pauperis, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" on or before 21 days from the date of this order. The responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

The Clerk of Court is directed to electronically serve a copy of this order, and a copy of Plaintiff's Complaint, on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED: September 23, 2020

**RICHARD F. BOULWARE, II,**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JEFFREY LYNN FRANKLIN,<br><br>                              Plaintiff,<br><br>     v.<br><br>HERNANDEZ, *et al.*,<br><br>                              Defendants. | Case No. 2:20-cv-00063-RFB-DJA<br><br>**REPORT OF ATTORNEY GENERAL<br>RE: RESULTS OF 90-DAY STAY** |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

///
///
///
///
///
///
///
///
///
//

1

# REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

    \_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

    \_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

    \_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

    \_\_\_\_ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

    \_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

2

____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____        _____
                          Print                                         Signature

Address:                                        Phone:

Email:

3